**WALKER CALDWELL PRODUCING CO. v. MENEFEE et al. (No. 8620.)**\*

(Court of Civil Appeals of Texas. Dallas. March 18, 1922. Rehearing Denied April 15, 1922.)

**I. Corporations ⟷110—Evidence held not to sustain findings for a defendant in a suit to cancel stock.**

In a suit to cancel a certificate for 10 shares of stock, evidence *held* not to sustain findings that plaintiff corporation did not issue any stock in return for postdated checks of a defendant until after the attention of its officers was called to that fact, and that thereafter it did issue such certificate, and that he really paid for 20 shares.

**2. Corporations ⟷129—Statute providing for transfer of stock on books mandatory and not suspended by failure of by-laws to prescribe manner.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1168, which in connection with section 1169, providing for a record of all transfers of stock, requires that stock shall be transferable on the books in such manner as the by-laws prescribe, is mandatory, and its operation is not suspended by failure of the by-laws to prescribe the manner of transfer.

**3. Corporations ⟷132—Statute held part of charter by which it must be held to have provided for transfer of stock only on books by method in common use.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1168, requiring stock to be transferred on the books in such manner as the by-laws prescribe, is construed as part of a corporation's charter as if written therein, by which its stockholders must be held to have provided that its stock shall be transferable on the books only in person by the holder or by attorney appointed by the holder to act for him, on surrender of certificate properly indorsed, the method in common use.

**4. Corporations ⟷132—Indorsement on stock certificate held a substantial compliance with statute for transfer on books as by-laws prescribe.**

An indorsement on the face of a stock certificate of a provision that it shall be "transferable only on the books of the corporation in person or by attorney on surrender of this certificate properly indorsed" was a substantial compliance by the board of directors with Vernon's Sayles' Ann. Civ. St. 1914, art. 1168, providing that stock shall be transferable on the books in such manner as the by-laws prescribe; for, in absence of proof to the contrary, it must be held that in exercise of the power conferred on them by law they selected such form of certificate to be used by the corporation and provided for such indorsement.

**5. Corporations ⟷129—Effect of indorsement on certificate of provision for transfer only on books stated.**

An indorsement pursuant to law on the face of a certificate of stock of a provision for

transfer thereof only on the books is a qualification against free and open sale and transfer so as to pass the legal title, precluding the corporation from asserting against a transferee unlawful issue or the want of title in the person to whom issued, or, in other words, without a regular transfer on the books, the transferee does not acquire legal title to the shares represented by the certificate, and at most acquires only an equitable assignment subject to the corporation's rights, under the law and such indorsement, to refuse to recognize the certificate's validity because inadvertently and erroneously issued without consideration as required by law, and in the unlawful conversion thereof through a sale the purchaser acquires no title as against the corporation unless by some act it is estopped to assert its rights.

**6. Corporations ⟷130—When corporation not estopped to assert invalidity of shares and refuse transfer on books.**

Where proper officers promptly denied application by the first transferee for a transfer on the books of a certificate of stock inadvertently issued, and refused to recognize the validity of the transfer thereof, and the stock never was paid for as required by law, and no act was committed recognizing the validity of its issuance and delivery, and it appears the corporation did nothing affecting its right to refuse to recognize its validity and to deny the right to have it transferred to such transferee on its books, it is not estopped to assert the invalidity of the shares and to refuse a transfer on its books.

**7. Corporations ⟷108—Transferee of stock certificate inadvertently issued held to acquire no greater right than holder then had.**

A transferee of a certificate of stock inadvertently issued acquires no greater right than the holder then in fact had to the shares represented by the certificate.

**8. Corporations ⟷111 — Shares symbols of property assignable, but not negotiable instruments.**

Shares of stock are but symbols of property, and may be assigned, but are not negotiable instruments.

**9. Corporations ⟷112—Sense in which certificates of stock are nonnegotiable stated.**

Certificates of stock are nonnegotiable in the sense that a complete transfer of title, good as against the corporation, can only be made when the transfer is made in accordance with a governing statute.

**10. Corporations ⟷130—Duty of corporation when stock is presented for transfer on books stated.**

For protection of its legitimate stockholders and creditors, a corporation, when stock is presented for transfer on its books, must ascertain if the certificate has been lawfully issued and is in the hands of one who has authority to transfer the same as against its rights, and to prevent the transfer if found to be unauthorized, or that the party making the transfer has not acquired title as against it.

---

⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

\*Writ of error refused May 31, 1922.

**11. Corporations ⊜⇒108—Transferee of stock issued by mistake and not paid for held not a bona fide purchaser for value without notice.**

Where one of the two first transferees of stock named in the transfer on the back of a certificate issued by mistake and never paid for claims the same against the other under a second transfer, but the latter's right, claim, or title was never recognized by the corporation, and he paid nothing of value for any interest therein, the former as the first transferee occupies no better position than if he purchased with notice of all the facts and circumstances as to issuance and delivery to the original holder, and hence he is not a bona fide purchaser for value without notice of the defect in the title.

**12. Corporations ⊜⇒110 — Evidence held to show that a transferee of stock, issued by mistake and not paid for, was not an innocent purchaser.**

Evidence, in a suit to cancel a certificate of stock issued by mistake and not paid for, *held* to show that defendant transferee was not an innocent purchaser, and that he bought the stock under circumstances of such suspicion that he was put on inquiry and was chargeable with notice that possession of the certificate by the seller was not that of an owner.

**13. Appeal and error ⊜⇒1175(7)—Where case was fully developed, court, on reversal, should render proper judgment.**

Where the case has been fully developed on the facts, it is the *duty of the appellate court*, on reversal, to render the judgment the court below should have rendered.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Suit by the Walker Caldwell Producing Company against A. J. Menefee and F. W. Blank. From a judgment for defendant Blank, plaintiff appeals. Reversed and rendered.

W. B. Hamilton, of Dallas, and Collins, Dupree & Crenshaw, of Hillsboro, for appellant.

Wear & Wear and Frazier & Averitte, all of Hillsboro, for appellee.

VAUGHAN, J. This suit was brought by appellant Walker Caldwell Producing Company, a corporation chartered under the laws of the state of Texas, against the appellees A. J. Menefee and F. W. Blank, to cancel a certain stock certificate purporting to represent 10 shares of appellant's capital stock of the par value of $50 per share, alleged to have been issued and delivered by accident and mistake to appellee Menefee, and for which appellant received no consideration.

Appellee Menefee made no answer to appellant's suit. Appellee Blank answered by general denial and by special plea, claiming to be an innocent purchaser of the stock for value; also filed a plea in the nature of a cross-action, claiming that in addition to the

10 shares of stock appellant by its suit sought to cancel he had purchased 10 additional shares of stock from appellant in a certain transaction between himself and said appellee Menefee, and that, owing to the fact that said Menefee had instructed appellant to issue certificate for 5 of said 10 shares of stock to one J. M. Paul, he, the said Blank, was only entitled to receive of said 10 shares so purchased 5 shares, and that appellant had refused to issue certificate to said appellee for said 5 shares, and was withholding said certificate for 10 shares sought to be canceled by appellant's suit; prayed that appellant be directed and required to issue and deliver to appellee Blank certificates covering said 15 shares, or, in the alternative, that he recover judgment against appellant for the sum of $1,500, the alleged value of said stock.

Trial was had before the court without a jury, and the court held that appellee Blank was an innocent purchaser for value of stock certificate No. 1875 for 10 shares, being the certificate sought to be canceled by appellant's suit, and that appellee was also entitled to receive stock certificate No. 4927 for 5 shares which had been issued in his favor and tendered into court by appellant's counsel. Said judgment further directed R. B. Stitchter, secretary-treasurer, and B. S. Walker, president of appellant, to issue and cause to be issued upon receipt by it of stock certificate No. 1875 a new certificate for 15 shares of appellant's capital stock, and deliver same to the clerk of the trial court within 10 days from the date of the judgment, and to receive from said clerk stock certificate No. 1875, and, in the alternative, that, failing to comply with said judgment in reference to the issuance and delivery of certificate for said 15 shares of stock, said appellee Blank recover of and from appellant judgment for the sum of $1,500, together with all costs incurred, and gave judgment in favor of appellant against appellee Menefee for $1,000.

[1] By appropriate assignments the trial court's findings of fact to the effect that appellant did not issue any stock in return for the postdated checks of appellee Blank until after the attention of its officers was called to that fact, and that thereafter it did issue its certificate No. 1875 for 10 shares, and that appellee Blank had really paid for 20 shares of appellant's capital stock, is challenged because said findings are not supported by the evidence in the record.

These assignments must be sustained as the evidence upon which the findings are based did not justify the conclusion reached by the court; said evidence being as follows: During the year 1918 and before November 14, 1918, appellee Menefee subscribed for 10 shares of the capital stock of the appellant corporation, and delivered to appel-

lant in consideration therefor his three checks postdated and in the amounts, respectively, as follows: $175, December 1, 1918; $162.50, January 1, 1919; $162.50, February 1, 1919. That thereafter, on or about the 14th of November, 1918, the appellee Menefee delivered to appellant three checks executed by appellee Blank, payable to the order of appellee Menefee and indorsed by him; said checks being postdated and in the amounts, respectively, as follows: $175, December 1, 1918; $162.50, January 1, 1919; $162.50, February 1, 1919. Said checks executed by appellee Blank were presented on November 14, 1918, by said Menefee to one R. B. Stitchter, then secretary-treasurer of appellant company, with the statement that he, Menefee, had had some business reverses that would not permit him to pay his postdated checks which he had given appellant, and that he desired to exchange the checks executed by appellee Blank for his, Menefee's, checks and take up the latter. Menefee's proposition was accepted, Blank's checks were delivered to appellant, and Menefee's postdated checks were returned to him by appellant in one and the same transaction. As a part of this transaction, when Menefee delivered to appellant the postdated checks signed by appellee Blank, he instructed said Stitchter, acting for appellant, to have 5 shares of the 10 shares of stock so purchased issued and sent to F. W. Blank, at Hillsboro, Tex., and a certificate for the other 5 shares issued and sent to J. M. Paul, of Hillsboro, Tex.

On the 4th day of February, 1919, there was issued by proper officers of appellant a certificate No. 1875 for 10 shares of the capital stock of appellant company through mistake to appellee A. J. Menefee; said certificate so issued bearing date February 4, 1919, and was forwarded on or about that date by mail to the said Menefee, who received same some time prior to February 26, 1919. Two certificates each for 5 shares of said 10 shares of stock should have been issued under the instructions of the said Menefee, one to appellee F. W. Blank and one to said J. M. Paul. The certificate for the 10 shares of stock so erroneously issued and delivered to said Menefee was without consideration, as there was no money paid, labor performed, or property actually received by appellant for said stock certificate No. 1875; that Blank's postdated checks, which were paid on or before February 4, 1919, constituted the consideration for the stock certificate issued to J. M. Paul in accordance with Menefee's instructions when he delivered the checks, and for stock certificate No. 4927 issued to Blank and tendered into court.

On March 19, 1919, appellant's attention was first called to the error it had made in issuing and delivering said certificate of stock for 10 shares to said Menefee by said J. M. Paul, claiming that he had never received certificate for the 5 shares of stock

240 S.W.—65

which were to be issued to him. On March 26, 1919, appellant issued and delivered to said J. M. Paul five certificates for one share each of its capital stock, being 5 of said 10 shares of stock which said Menefee had contracted to purchase and had paid for by the postdated checks issued by appellee Blank, and for which he had instructed appellant to issue certificate to the said Paul.

On the 14th of November, 1918, appellee Blank contracted with Menefee for the purchase of 10 shares of appellant's capital stock at $50 per share, executing and delivering his three certain postdated checks payable to said Menefee, or order, dated and in the respective amounts above set out, aggregating $500. On November 23, 1918, appellee Blank purchased direct from appellant through one of its stock salesmen 5 shares of its capital stock for which certificate No. 1648 was issued under date January 22, 1919, and duly delivered to said appellee prior to February 26, 1919.

On the 26th of February, 1919, appellee Blank and appellee Menefee had another stock transaction in which appellee Menefee, then being in possession of said certificate No. 1875 for 10 shares of appellant's stock, exchanged or sold same to appellee Blank for $650, said consideration being paid by appellee Blank transferring said certificate No. 1648 for 5 shares to W. R. Walker at the request of Menefee and the execution by Blank of his note of that date for $150, payable 30 days after date to J. M. Paul. The validity of the issuance of said certificate No. 1875 for said 10 shares to appellee Menefee had never been recognized by appellant, and, when for the first time called upon to recognize the validity of same under the transfer by said Menefee to appellee Blank, appellant repudiated said certificate of stock, claiming that same had been erroneously issued and delivered to said Menefee without consideration, and that he had not acquired any title thereto, and that by the transfer from Menefee to Blank, Blank had not acquired title to the 10 shares of stock evidenced by said certificate No. 1875. Appellee Blank only purchased from appellant 5 shares of its capital stock for which said stock certificate No. 1648, dated January 22, 1919, was issued to him. Appellant did not have any knowledge of the transactions involving the purchase and sale of said shares of its capital stock by and between said appellees Blank and Menefee, and no notice thereof until on or about the 19th day of March, 1919.

A general discussion of the remaining assignments will suffice to present our views in reference thereto without particularizing the several propositions involved.

[2] Said stock certificate No. 1875, as well as all other stock certificates of the appellant, contained the following provision:

"Transferrable only on the books of the corporation in person or by attorney on surrender of this certificate properly indorsed."

The reverse side of said stock certificate contained the following blank transfer:

"For value received —— hereby sell, assign and transfer unto ——, —— shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint —— to transfer the said stock on the books of the within named corporation, with full power of substitution in the premises."

Article 1160, Vernon's Sayles' Statutes, provides:

"They [referring to directors] shall cause a record to be kept of all stock subscribed and transferred, and of all business transactions; and their books and records shall, at all reasonable times, be open to the inspection of any and every stockholder."

Whereby it was made the duty of the directors of appellant to cause a record to be kept of stock subscribed and transferred by its stockholders.

Article 1168, Id., provides:

"The stock of any corporation created under this title shall be deemed personal estate, and shall be transferrable only on the books of the corporation in such manner as the by-laws may prescribe."

By article 1168, supra, appellant's stock was in law deemed to be personal estate, and, after having been duly issued in the manner and form provided by law, was transferable only on the books of the corporation. Milner v. Brewer-Monaghan Mercantile Co. (Tex. Civ. App.) 188 S. W. 49. This requirement of the law regulating the transfer of such stock the appellant could not dispense with, being mandatory. The failure of appellant's directors to prescribe in its by-laws the manner in which its stock duly issued and outstanding should be transferred did not suspend the operation of said law requiring that its stock shall be transferable only on its books, * * * the law only conferring on its directors the right to prescribe the manner in which such stock should be transferred. This being a general statute applicable to private corporations, same should be construed as part of appellant's charter powers and requirements, as if written therein, by which appellant's charter must be held to have provided that its stock shall be transferable on the books of the company only in the method in common use, to wit:

"In person by the holder or by attorney appointed by the holder to act for him in the premises, on surrender of certificate of stock proposed to be transferred properly indorsed." Wm. Whitfield v. Nonpariel Consolidated Copper Co., 67 Wash. 286, 123 Pac. 1078, 41 L. R. A. (N. S.) 187.

[3-5] However, if we should as to this proposition of law be in error, the provision "transferrable only on the books of the corporation in person or by attorney on surrender of this certificate properly indorsed" on stock certificate No. 1875 we hold to be a substantial compliance with said article 1168 by appellant's board of directors, for, in the absence of proof to the contrary, it must be held that in the exercise of the power conferred on them by law appellant's directors selected the form of stock certificate to be used by appellant, and provided for said provision to appear on the face of same. We therefore hold that said indorsement on the face of said certificate No. 1875 was a qualification thereon against free and open sale and transfer so as to pass the legal title to such certificate, precluding appellant from asserting against appellee Blank, the first transferee thereof, the unlawful issue of such certificate or the want of title to the same in Menefee. In other words, that Blank did not acquire legal title to the shares of stock represented by said certificate No. 1875 because they were not obtained under regular transfer provided for by law as per the indorsement for the transfer of such stock on the face of said certificate, and that Blank, at most, could acquire only an equitable assignment subject to the rights of appellant under the law and said indorsement, of which appellee Blank was bound to take notice, to refuse to recognize the validity of said stock certificates on the ground that same was inadvertently and erroneously issued by appellant to said Menefee, and that without the payment of any consideration as required by law, and that in the unlawful conversion of same by Menefee through the sale to appellee Blank, Blank acquired no title thereto as against appellant, unless by some act appellant is estopped from asserting such rights.

[6] The next inquiry, therefore, is whether the appellant had done anything to deprive itself of the rights to refuse to recognize the validity and to accord said shares of stock transfer to appellee Blank on its books.

The proper officers of appellant promptly denied the application of appellee Blank to have the certificate of stock transferred on the books of the company, and therefore refused to recognize the validity of the transfer of said stock to the first transferee, appellee Blank, and has never been paid for said stock in the manner and form required by law by appellees, or either of them, or committed any act recognizing the validity of the issuance and delivery of said stock to said Menefee. The record in fact discloses that nothing had been done by appellant affecting its right to refuse to recognize the validity of said stock and to deny the right to have same transferred to appellee Blank on its books. Under such circumstances, it must be held that appellant had

not committed any act whereby it was estopped from asserting the invalidity of said shares of stock and refusing to permit the same to be transferred on its books to appellee Blank. Union Bank of Georgetown v. Laird, 2 Wheat. 390, 4 L. Ed. 269.

[7-9] By said transfer appellee Blank did not acquire any greater rights than the holder Menefee then in fact had to the shares of stock represented by said certificate. Seeligson & Co. v. Brown, 61 Tex. 114.

"Shares of stock are but symbols of property. They may be assigned, but are not negotiable instruments. Such certificates are nonnegotiable, in the sense that a complete transfer of title, good as against the corporation, can only be made when the transfer is made in accordance with a governing statute." Whitefield v. Nonpariel Consolidated Co., supra; Anderson v. Nicholas, 28 N. Y. 601.

[10] The duty was enjoined upon appellant, acting through its proper officers, for the protection of its legitimate stockholders and creditors, when appellee Blank presented for transfer to himself on the books of appellant the 10 shares of stock involved herein, to ascertain whether or not the certificate No. 1875, representing said 10 shares of stock, had been lawfully issued and was in the hands of one who had authority to transfer same as against the rights of the company, and, if found to be unauthorized, or that the party making such transfer had not acquired title thereto as against the company, to prevent the transfer of such stock being made. Geyser-Marion Gold-Min. Co. v. Stark, 106 Fed. 558, 45 C. C. A. 467, 53 L. R. A. 684. Said stock certificate No. 1875 was issued through oversight or mistake by appellant to appellee A. J. Menefee, being the initial issue of said 10 shares of stock, which was not paid for in money, property, or by labor by appellees or either of them.

[11] Appellee Blank and one M. W. Page are the first transferees named in the transfer on the back of said certificate after said stock had been so issued. Appellee Blank claims said 10 shares of stock under a second transfer from said M. A. Page, but Page's right, claim, or title to said stock was never recognized by the appellant, and Page paid nothing of value for any interest in the stock. Therefore appellee Blank as the first transferee occupies no better position than if he had purchased said stock with notice of all the facts and circumstances surrounding and connected with the issuance and delivery of same into the possession of appellee Menefee, as disclosed by the facts as found by us from the evidence. We therefore hold that appellee Blank was not a bona fide purchaser for value without notice of the defect in the title to the 10 shares of stock. Weniger v. Success Mining Co., 227 Fed. 548, 142 C. C. A. 180; Machinists' National Bank v. Wm. N. Field et al., 126 Mass. 345; Kim-

ball v. Success Mining Co., 38 Utah, 78, 110 Pac. 872 (concurring opinion by Judge Frick at page 879).

Appellant, acting through its proper officers, erroneously issued the certificate for the 10 shares of stock to appellee A. J. Menefee. For this certificate appellant did not receive any consideration either in money, property, or labor performed. Menefee knew when he received this certificate that same had been erroneously issued and delivered to him, and that he had no right to retain same.

On February 26, 1919, a transaction occurred between appellees Blank and Menefee by which said Blank acquired the possession of certificate of stock No. 1875 for 10 shares under the circumstances and for the consideration herein discussed in our findings of fact. At this time said Blank had not received from the said Menefee the 10 shares of appellant's stock so purchased and paid for, yet, notwithstanding the fact that he had purchased and paid for said 10 shares of stock which he had not received, we find appellee Blank purchasing from appellee Menefee an additional 10 shares of stock for $650, being $350 less than the market value of same, as sworn to by said Blank, and, so far as the record discloses, he purchased said additional stock without even calling on said Menefee for the 10 shares which he purchased from Menefee November 14, 1918. The consideration was paid by appellee Blank transferring 5 shares of stock evidenced by certificate No. 1648 of date January 22, 1919, to W. R. Walker, and the execution by Blank of his certain promissory note for $150, payable in 30 days after date to J. M. Paul. Appellee Blank had intrusted appellee Menefee with his postdated checks, aggregating $500, in payment of the purchase price for the 10 shares of stock he contracted on November 14, 1918, to purchase from said Menefee. Appellee Blank acquired no greater title than if said stock had been purloined by appellee Menefee, and, further, the facts and circumstances were sufficient to put an ordinarily prudent person upon inquiry. In fact, not far from being sufficient to be absolute notice to Blank of the fraudulent act on the part of said Menefee in thus unlawfully converting to his use and benefit the 10 shares of stock to which he was not in morals or in law entitled to retain or had any character of right, claim, or title thereto.

As said by Judge Davies in the case of Anderson v. Nicholas, supra:

"There can be no question upon the correctness of this recovery. The stock, sold and converted by the defendant, and the avails of which he received, was undisputedly the property of the plaintiff. The conversion by the defendant was distinctly found. The defendant acquired no title thereto, by the delivery thereof to him by the person who purloined the same from the plaintiffs, and he therefore acquired no greater or better title to it than that possessed

by the person from whom he received it. * * * The person taking this stock from the plaintiffs had no legal right to same, and he could confer on the defendant no stronger or better claim to the stock than he possessed"—citing Mechanics' Bank v. N. Y. & N. H. Ry. Co., 13 N. Y. 599.

[12] We therefore hold that under no theory of the case as developed by the evidence was appellee Blank an innocent purchaser of the 10 shares of stock. The evidence established that said shares of stock were purchased under circumstances of so much suspicion that appellee Blank was put on inquiry and was chargeable with notice that the possession of the certificate for said 10 shares of stock by said Menefee was not that of an owner. The environments involving the acquisition of said shares of stock were sufficient unmistakably to indicate to appellee Blank that the purchase of same was not a bona fide transaction, and he cannot avail himself of the purchase of said certificate of stock made under the circumstances disclosed in the case.

[13] The case having been fully developed on the facts, it is our duty to proceed to render the judgment that should have been rendered by the court below.

The judgment of the court below is reversed, and judgment is here rendered in favor of appellant that said stock certificate No. 1875, issued by appellant on the 4th day of February, 1919, for 10 shares of stock to said appellee A. J. Menefee, and now in the possession of said appellee Blank under assignment from said Menefee and M. A. Page, be, and the same is hereby, canceled, vacated, and held for naught, and that appellee F. W. Blank take nothing by his cross-action,, and that the clerk of the district court of Hill county be, and he is hereby, directed to deliver to appellee F. W. Blank stock certificate No. 4927, tendered into court by appellant, and that all costs incurred in this court and the trial court be, and the same are hereby, adjudged against said appellees Blank and Menefee.

We, therefore, sustain all of appellant's assignments of error except the first assignment.

Reversed and rendered.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes