MARY S. RIPLEY *vs.* J. MURRAY WALKER & COMPANY, INC.
& another.

Suffolk.    March 10, 1934. — May 23, 1934.

Present: CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Equity Jurisdiction,* To relieve from results of fraud. *Bona Fide Purchaser. Corporation,* Transfer of stock.

Where it appeared in a suit in equity that the plaintiff, the owner of shares of corporate stock, for a certain purpose delivered to a stockbroker a certificate for the shares standing in the plaintiff's name, together with a stock power in the standard form signed by the plaintiff in blank; that subsequently the defendant demanded of the stockbroker certain other stock certificates which he was entitled to receive from the stockbroker as a result of a transaction with him, and later demanded collateral security therefor, which the stockbroker promised to give; that thereupon the stockbroker, in fraud of the plaintiff and without authority from him, delivered to the defendant as such collateral security the plaintiff's certificate, bearing the proper revenue stamps, and the stock power signed by the plaintiff; that the defendant received the plaintiff's certificate in good faith and without knowledge of the stockbroker's lack of authority so to transfer it; and that the stockbroker thereafter was adjudicated a bankrupt, it was *held,* that the defendant obtained a good title to the plaintiff's certificate and the shares represented thereby, and that the plaintiff was not entitled to recover the certificate from the defendant.

BILL IN EQUITY, filed in the Superior Court on December 30, 1931, described in the opinion.

The suit was heard by *Whiting,* J. The evidence was reported. Material findings by him, and a final decree entered by his order, are described in the opinion. The plaintiff appealed. The principal contention stated in her brief was that the finding, that the defendant Waldron obtained the certificate for one hundred thirty-five shares of the stock of Troy Blanket Mills "in good faith and without notice of the plaintiff's ownership therein, is clearly wrong on the evidence as reported."

The case was submitted on briefs.

*J. Cavanagh,* for the plaintiff.

*F. W. Crocker,* for the defendant Waldron.

CROSBY, J.  This bill in equity is brought to recover from the defendant Ruth A. Waldron one hundred thirty-five shares of the capital stock of the Troy Blanket Mills, alleged to have been obtained by the defendant J. Murray Walker & Company, Inc., from the plaintiff by false representations and delivered by the defendant corporation to the defendant Waldron without consideration, and with notice to her that the stock belonged to the plaintiff.

The case was heard by a judge of the Superior Court who found the following facts: For some time before November, 1931, the plaintiff had bought and sold securities through J. Murray Walker & Company, Inc., dealing with one Thayer, an agent of the corporation. As the result of those operations she had lost most of her property, but had kept two hundred seventy shares of the Troy Blanket Mills. Thayer induced her to borrow money upon this stock for the purpose of enabling her to get other securities in an attempt to recoup her losses. He told her that as the stock was not listed it would be necessary for him to have the stock certificates to determine the amount which would be loaned. She agreed that he might have them for that purpose, and if the information was satisfactory she would borrow the money. Thereafter she delivered to him two certificates of this stock for one hundred thirty-five shares each; they had no blank form of transfer on the back thereof. While at the safe deposit vault she executed in blank an irrevocable stock power in standard form for each certificate, and gave these powers to Thayer. He agreed to let her know within a day or two what amount would be loaned. The next day she called up the defendant J. Murray Walker & Company, Inc., and stated that she did not desire to make the loan and asked for a return of the certificates. She was told that they had been sent out of the city, and that when they were returned she would get them. She had difficulty in seeing Thayer or any one connected with the defendant company who would admit knowing about the matter. When she succeeded in seeing such a person she was given evasive answers. She never was able to obtain either certificate. She executed an instrument of which

the following is a copy: "Boston, Mass. November 4, 1931. TO WHOM IT MAY CONCERN: I hereby authorize J. MURRAY WALKER & CO., INC., to sell or use as collateral any securities standing in my name. WITNESS: D. F. Thayer   SIGNED: Mary S. Ripley."

The judge found that the defendant Ruth A. Waldron was the owner of seventy-five shares of stock of the New England Telephone and Telegraph Company; that she desired to sell twenty-five of these shares and buy certain bank stock with the proceeds. She never had done any business with the defendant J. Murray Walker & Company, Inc., but went to its office and arranged for it to sell twenty-five shares of her stock, and to buy stock of the National City Bank and the Guaranty Trust Company with the proceeds. She delivered the seventy-five shares of the New England Telephone and Telegraph Company and obtained a receipt in her name stating "25 to sell and 50 shares to be returned in the name of above." Later she received a memorandum that the twenty-five shares had been sold, and that the bank stock had been purchased, and she received a check to her order for a small balance. She did not receive the new certificates for several weeks thereafter, but found that her certificate for seventy-five shares had been received by the company and that new certificates for seventy-five shares had been issued in the names of other persons. She immediately went to the defendant J. Murray Walker & Company, Inc., and demanded her certificates but failed to receive them. Thereafter she went to the defendant company with counsel and demanded collateral security if her stock could not be delivered, but her demand was not complied with; later she was told that the company would be able to give her security on the following morning. The next morning she was given certificate numbered 128 of the Troy Blanket Mills for one hundred thirty-five shares of stock. This certificate was made out in the name of the plaintiff, and had thereon the proper revenue stamps, with cancellation date of December 9, 1931, together with stock power above referred to signed by the plaintiff. A

copy of this stock power delivered to her was as follows: "FOR VALUE RECEIVED . . . hereby sell, assign and transfer unto . . . One Hundred Thirty-five (135) Shares of the . . . Capital Stock of . . . Troy Blanket Mills . . . standing in . . . name on the books of said . . . represented by Certificate No. . . . herewith and do hereby irrevocably constitute and appoint . . . attorney to transfer the said stock on the books of the within named company with full power of substitution in the premises. Dated . . . MARY S. RIPLEY In Presence of D. F. Thayer SIGNATURE GUARANTEED J. MURRAY WALKER & COMPANY, INC. A. M. STEUBLEN, Asst. Treas. SIGNATURE GUARANTEED H. C. Wainwright Member of New York & Boston Stock Exchanges." The words "One Hundred Thirty-five (135)" and "Troy Blanket Mills" together with the signatures of the witness and the two guarantees of her signature had been added since the plaintiff gave this power to D. F. Thayer. When this certificate of stock was given to the defendant Ruth A. Waldron by a member of the defendant corporation, she asked if it was negotiable and he told her it was. She then asked its value. He told her that some of the stock had been selling for $42 a share within a week, that he hoped she would not sell it at once as it would embarrass the corporation, and she was asked if she would hold the stock; she replied that she would have to see her counsel about it. After this conference she notified the officer of the defendant company that she would be willing to hold the stock for one week. She has held it ever since. The judge further found "that she did not know at the time she received the stock or until the bringing of the suit in this case that the defendant J. Murray Walker & Company, Inc., had no actual authority to sell the stock or pledge it as collateral, that she took the certificate for value to secure the debt it owed her and in good faith."

The defendant company was petitioned into involuntary bankruptcy on December 30, 1931, and a receiver was appointed. It was adjudicated a bankrupt January 12, 1932, and a trustee was elected March 8, 1932. The judge

ordered a decree to be entered establishing the claim of the plaintiff against the defendant company in the sum of $6,750 and interest, and dismissing the bill against the defendant Ruth A. Waldron. The record recites that the case came on to be further heard upon the merits, and a final decree was entered ordering the defendant company to pay to the plaintiff $13,500 with interest of $945 or a total of $14,445. The decree further ordered that the bill be dismissed against the defendant Ruth A. Waldron. From this decree the plaintiff appealed. The plaintiff, by an agreement in writing, waived on appeal all questions relating to the validity of her signature upon the certificate of the one hundred thirty-five shares of Troy Blanket Mills stock transferred to the defendant Waldron. The question presented for decision is whether there was any error of law in the entry of the decree dismissing the bill as against the defendant Waldron. The evidence is reported.

As stated by the trial judge the question to be decided is "which of two innocent women will have to suffer loss by the knavery of one or more officers or agents of the defendant. J. Murray Walker & Company, Inc." The certificate of stock representing one hundred thirty-five shares of the Troy Blanket Mills with an assignment thereof signed by the plaintiff, who appeared thereon to be the owner of the shares thereto attached, was delivered to the defendant Waldron by the defendant company. She took the certificate of stock in good faith and without notice of the lack of authority on the part of the transferor. In these circumstances it is plain that she obtained a good title to the certificate, and to shares which it represented. She took the stock as collateral to secure the debt owed her by the defendant company and is entitled to hold it as against the plaintiff although the defendant company, its officers and agents, by such transfer, had grossly defrauded the plaintiff. Upon the facts found it is apparent that the defendant Waldron obtained a good title to the certificate, and to the stock represented thereby. See G. L. (Ter. Ed.) c. 155, § 27. The evidence amply

justified the finding of the trial judge that the defendant Waldron received the stock without knowledge. that the defendant J. Murray Walker & Company, Inc., had no authority to sell or pledge it, and that she in good faith took the certificate, with a stock power properly signed in blank attached, to secure the debt owed her by the defendant company. It is not argued that Waldron was not a purchaser for value. As the evidence amply warranted the findings of the judge, the decree dismissing the bill as against the defendant Waldron must be affirmed.

*Ordered accordingly.*